UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JOHN DIPALMA, | CASE NO. 1:10CV2133 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Michael John DiPalma, seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the decision of the Commissioner is affirmed.

**I.      PROCEDURAL AND FACTUAL HISTORY**

On December 21, 2006, Plaintiff filed an application for DIB and SSI alleging disability beginning November 24, 2005. ECF Dkt. #10-5 at 167-170, 171-174.[1] The SSA denied Plaintiff's application initially and on reconsideration. ECF Dkt. #10-4 at 142-143, 144-145. Plaintiff filed a request for an administrative hearing, ECF Dkt. #10-5 at 160, and on September 8, 2009, an ALJ conducted the administrative hearing where Plaintiff and Barbara Burk, a vocational expert, offered testimony. ECF Dkt. #10-3 at 86-128. At the hearing, Plaintiff amended his onset date to August 18, 2006, the day after a previous application for DIB was denied. ECF Dkt. #10-2 at 76. On October 16, 2009, the ALJ issued a Decision denying benefits. *Id.* at 76-84. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 65-67.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

On September 22, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On April 13, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #13. On June 1, 2011, Defendant filed a brief on the merits, then, on that same day, an amended brief on the merits. ECF Dkt. #15,16. No reply brief was filed.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from degenerative disc disease of the cervical and lumbar spine, depression, post traumatic stress disorder, and dyslexia, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dkt. #10-2 at 78. The ALJ further found that Plaintiff met the insured status requirements through December 31, 2007. *Id.* The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id*.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), except with the non-exertional limitations that he avoid overhead reaching with his non-dominant left arm; that he avoid climbing ladders, ropes and scaffolds; that he perform occasional stooping, crouching, crawling, kneeling and balancing; that he perform simple, routine tasks that can be performed independently and that involve working primarily with things rather than people; that he have superficial interaction with coworkers and supervisors; that he have no direct interaction with the general public; that he avoid strict production quotas or rigorous production pace; and that he preferably have oral instructions with no tasks requiring reading except for simple words or occasional short and simple notes (20 C.F.R. 404.1545 and 416.945.) Although the ALJ found that Plaintiff could not perform his past relevant work, he determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to DIB or SSI.

## III. **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe

enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* The claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.     STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

Plaintiff advances two arguments in this appeal. First, Plaintiff contends that the ALJ erred in not affording controlling weight to the opinions of three treating physicians in this case. Second, Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's credibility. Plaintiff was in a motor vehicle accident in 1997, he was rear-ended by a drunk driver. Plaintiff contends that he suffers severe ongoing physical and mental problems as a result of the accident.

Plaintiff alleges that he suffers debilitating lower back, neck, arm, and hand pain. Plaintiff was treated by Dr. Randall Schwartz, M.D. Dr. Schwartz, an internist, for a myriad of physical problems and his treatment notes from September 6, 2006 to March 5, 2009 are a part of the record. Dr. Schwartz completed a basic medical form (which is not dated, but indicates a "date of last exam" of March 28, 2008) in which he concludes that Plaintiff can stand/walk one hour in an eight-hour workday, and sit one hour in an eight-hour workday. ECF Dkt. #10-10, p. 346-347. Plaintiff can only lift/carry up to 5 pounds frequently during an eight-hour workday. *Id.* Moreover, Dr. Schwartz observes that Plaintiff is markedly limited in his ability to bend, and moderately limited in his ability to push/pull, reach, and engage in repetitive foot movements. *Id.* Dr. Schwartz cites "cervical radiculopathy and pain" as the cause of Plaintiff's severe limitations, and concludes that his limitations are expected to last twelve months or more, and that he is unemployable. *Id.*

Plaintiff also asserts that he suffers from debilitating mental problems, including post traumatic stress disorder and depression, which result in problems with concentration, anxiety, and

-4-

panic attacks. Plaintiff was treated by numerous mental health professionals during the course of his treatment, however, based upon the amended onset date of August 18, 2006, relevant treatment notes in the record span from August of 2006 to June of 2009. Dr. Gautam Datta, M.D., who treated Plaintiff from February of 2006 to May of 2007, completed a mental functional capacity assessment ("MFCA") dated November 21, 2006. Dr. Datta concluded that Plaintiff is markedly limited in his abilities to understand and remember detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and to complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the public, to ask simple questions or request assistance, to accept instruction and respond appropriately to criticism, to get along with coworkers without distracting them or exhibiting behavioral extremes, and to maintain social appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond to changes in the work setting , to be aware of normal hazards in the workplace, and to set realistic goals or make plans independently of others. Dr. Datta further concluded that Plaintiff was moderately limited in all of the other areas of understanding and memory, social interaction, and adaption listed in the MFCA.

In a section that asks the physician to list the observations and/or medical evidence supporting the physician's conclusions about Plaintiff's limitations, Dr. Datta writes that Plaintiff "has significant problems [with] depression, concentration, sustaining attention, memory difficulties, increased anxiety, headaches, chronic neck and back pain which have significantly [sic] physical function and has left him emotionally distraught preventing from maintaining a consistency of meaningful employment at a level which is significantly impaired compared to his prior level of functionality." ECF Dkt. #10-10 at 326.

Dr. Angela Gannon, M.D., who treated Plaintiff from October of 2007 to March of 2008, completed a MFCA (which is not dated, but indicates a "date of last exam" of March 25, 2008) in which she concluded that Plaintiff was markedly limited in his abilities to remember locations and work-like procedures, to understand and remember detailed or even very short and simple instructions, to interact appropriately with the general public, to get along with coworkers without

-5-

distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. ECF Dkt. #10-113, p. 425. She further concluded that Plaintiff was moderately limited in all abilities listed under sustained concentration and persistence.

In the section that asks the physician to list the observations and/or medical evidence supporting the physician's conclusions about Plaintiff's limitations, Dr. Gannon wrote that Plaintiff developed significant symptoms following the automobile accident in 1997, including "sweating, shortness of breath, heart palpitations, and feelings of impeding doom. He subsequently developed problems at work such as poor concentration and debilitating panic attacks. He has had to quit subsequent jobs secondary to his symptoms and he currently suffers from depression as well. Most significantly he suffers from symptoms of post traumatic stress disorder (hypervigilance, poor motivation, and social withdrawal); It would currently not be in his best interest to maintain employment due to his mental state." ECF Dkt, #10-13, p. 426. Both Dr. Datta ( in 2006) and Dr. Gannon (in 2008) wrote that Plaintiff's problems could be expected to last twelve months or more and that Plaintiff was unemployable.

Plaintiff contends that the foregoing opinions should have been given controlling weight by the ALJ. It is true that an ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines

that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner Of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*.

Looking first at Plaintiff's physical limitations, the ALJ gave no weight to Dr. Schwartz's conclusion that Plaintiff could only stand/walk or sit one hour in an eight hour workday. Although he included several limitations relating to bending and reaching in the RFC, the ALJ did not credit Dr. Schwartz's opinion as it related to Plaintiff's ability to stand/walk and sit. In rejecting Dr. Schwartz's conclusions, the ALJ cited a lack of any supporting evidence in the record, laboratory test results indicating only mild degeneration of the spine and mild stenosis, the sporadic treatment sought by Plaintiff for his pain, as well as the non-narcotic treatment he received. The ALJ wrote:

> Randall Schwartz, M.D. submitted office notes showing joint pain and submitted an MRI scan showing mild disc bulging at C6-C7 and mild stenosis without spinal cord compression (Exhibits 2F, 14F, and 16 F). Teresa Ruch, M.D. similarly reported findings of neck pain, left arm pain and back pain without severely restricted joint motion, joint inflamation, motor weakness or gait disruption. Additionally, she submitted MRI scans showing degenerative disc disease at L1-L2, and C6-C7 without evidence of frank herniation an electromyogram that showed chronic radiculopathy of only mild severity, noting that these results do not correlate to the claimant's subjective complaints. (Exhibits 13F and 18 F). Mr. DiPalma has sought treatment only sporadically for his complaints of pain. Only conservative treatment modalities have been offered, and definitely no physician has ever indicated that the diagnostic test results and clinical signs would warrant surgery. There is no history of continuous narcotic prescriptions. At Exhibit 7F Mr. DiPalma's prescribed pain medication is only Ibuprofen, an over-the-counter medication in 800 mg doses.

ECF Dkt. #10-2, p. 80.

Dr. Schwartz's notes reveal ongoing treatment for stomach problems, recurrent sinus infections, coughs, and chest congestion, headaches and fatigue beginning in September of 2006. Throughout his treatment with Dr. Schwartz, Plaintiff was consistently prescribed Effexor, Motrin, Nexium/Prilosec/Aciphex, and occasionally antibiotics. Plaintiff first complained of back pain at an appointment on January 9, 2008, however, Dr. Schwartz's notation reads, "lower back pain when pt coughs." ECF Dkt. #10-13, p. 443. The January 9th notes do acknowledge chronic back pain, as well as arm and hand pain, since the automobile accident, but Dr. Schwartz acknowledged that there is no atrophy, and normal muscle bulk and tone. *Id.* In the notes from Plaintiff's January 23, 2008 appointment, Dr. Schwartz reviewed an MRI of Plaintiff's cervical spine, which indicates a bulging disc at C6-7, and he indicates that an MRI of the lumbar spine is needed. Id. at 442. The notes further indicate that Dr. Schwartz intends to refer Plaintiff to a specialist to investigate his chronic

pain.

In Dr. Schwartz's notes from Plaintiff's March 28, 2008 appointment, he writes that Plaintiff "needs form filled out again, have to say he's unemployable." *Id.* at 441. The notes reflect the results of the EMG ordered by Dr. Ruch, however, the EMG revealed mild damage and no additional pain medication was prescribed as a result of the tests. In fact, the only appointment when Plaintiff was prescribed pain medication (other than Motrin) was on October 30, 2007, when he injured his foot.

Controlling weight need only be given to the opinion of a treating physician where his or her opinion is supported by the record. Here, Dr. Schwartz's treatment notes do not support his conclusion that Plaintiff's pain requires that he lie down for six hours of an eight hour workday. First, although Dr. Schwartz began treating Plaintiff in September of 2006, Plaintiff did not complain of chronic back pain until January of 2008. When he complained of back pain in January, 2008, several tests were performed that revealed mild disc degeneration and mild stenosis. Although Plaintiff had two appointments with Dr. Ruch, a neurosurgeon, he stopped seeing her after he received the results of the MRI and EMG. No additional pain medication was prescribed, and no narcotic pain medication was ever prescribed for his back and neck pain. The remainder of Dr. Schwartz's medical notes do not reveal any additional complaints regarding debilitating back or neck pain. Accordingly, the ALJ did not err in discounting the wholly unsupported conclusion of Dr. Schwartz that Plaintiff was capable of standing/walking and sitting only one hour of an eight hour workday.

Turning to Plaintiff's limitations based upon his mental problems, the ALJ included some but not all of the limitations described by Drs. Datta and Gannon. As with Dr. Schwartz's findings, the ALJ did not wholly credit the conclusions of Drs. Datta and Gannon due to a lack of support in the treatment notes of both doctors, or, for that matter, in the treatment notes of any other physician who treated Plaintiff. First, throughout Plaintiff's mental health treatment, Plaintiff's physicians consistently note that Plaintiff is calm and cooperative in appearance, oriented to time, place, and person, clear speaking, with a logical, organized thought process. His physicians consistently recognize no abnormal thought processes, suicidal or homicidal intentions. His judgment is almost

always fair, as are his recent and remote memory. He demonstrates a sustained attention span and concentration and appropriate language and affect. None of the relevant records reveal any failure to attend appointments or any tardiness on Plaintiff's part. Although Plaintiff consistently expresses frustration with his living situation and his inability to get disability, no physician ever notes that Plaintiff refuses to cooperate or talk.

Based upon the amended onset date of August 18, 2006, Dr. Datta's notes beginning in August of 2006 are relevant to the disability applications. Dr. Datta diagnoses include post traumatic stress disorder, depression NOS, and dyslexia. ECF Dkt. #10-12, p. 395. At his August 10, 2006 appointment, Plaintiff indicates that he really wants a house and intends to use the proceeds from a pending lawsuit as a down payment that his father intends to match. *Id.* at 400. At his September 14, 2006 appointment, Plaintiff indicated that he wanted a steady income but was not interested in vocational rehabilitation, Dr Datta quoted Plaintiff as stating, "I'm not interested, I don't know why." *Id.* at 399. Dr. Datta wrote that Plaintiff was "still blaming others for things that happen to him," that he was anxious and depressed, and a poor candidate for a job. *Id.* at 394. It is important to note that Plaintiff states at each appointment with Dr. Datta that he is not in any pain.

Dr. Datta completed the MFCA at issue in November of 2006. The treatment notes in the record do not provide any support for Dr. Datta's conclusions regarding Plaintiff's marked limitations. As a matter of fact, his treatment notes belie many of his conclusions. As stated previously, Dr. Datta recognizes that Plaintiff's appearance is calm and cooperative, he is oriented to time, his speech is clear and his thought processes are normal. His recent and remote memory are good and his attention span and concentration are good. His treatment notes directly contradict his conclusions in the MFCA.

The same is true of Dr. Gannon's treatment notes. Dr .Gannon began treating Plaintiff in October of 2007. In a "summary of care" provided by Dr. Emanuelle Duterte, M.D. who treated Plaintiff from August 1, 2007 to October 15, 2007 (in the interim between Dr. Datta and Dr. Gannon), Dr. Duterte recognizes that Plaintiff is "not too keen" on working and that he puts too much emphasis on his medical problems. *Id.* at 367. In her treatment notes dated November 13, 2007, Dr. Gannon writes that Plaintiff is living with his girlfriend after his brother "took over" their

mother's house after her death, and that he feels like he is taking advantage of his girlfriend because he cannot contribute to the household. *Id.* at 365. In December of 2007, Plaintiff expressed frustration with his living situation and stated that he did not know how much longer he could live with his girlfriend. *Id.* at 363. At his January 21, 2008 appointment, Plaintiff complained about his struggle to get disability benefits and stated that his father told him to get a job. He expressed frustration with his father, who he claims did not understand his inability to work. *Id.* at 360. At his February 25, 2008 appointment, Plaintiff complained of back pain with an intensity of ten out of ten, and stated that a recent finding of spinal stenosis would prove his disability claim. At his final appointment with Dr. Gannon, on March 29, 2008, Dr. Gannon wrote that Plaintiff "talked extensively" about his disability claim, although "not as much as usual" and he reported that he was suffering panic attacks "out of the blue," including when he is driving. Furthermore, he stated that he is unable to complete projects at home. *Id.* at 356.

Based upon the foregoing treatment notes, there is no evidence to support Dr. Gannon's conclusions about Plaintiff's marked limitations. According to Dr. Gannon's treatment notes, Plaintiff appears to function normally, with a single exception of the panic attacks he mentions during his final visit. Dr. Gannon does not memorialize any functional difficulties throughout his treatment. As the ALJ noted, the lion's share of the treating notes refer to Plaintiff's frustration about his inability to get disability benefits, rather than chronicle the symptoms that cause his inability to function in the work place. As a matter of fact, Dr. Gannon acknowledges in her "summary of care" statement (when Plaintiff's treatment was assigned to another physician in June of 2008) that Plaintiff is preoccupied with being awarded disability despite the fact that "his physical complaints seem fairly minor" and that he "has never discussed specific psychiatric symptoms with me other than to state that his anxiety would probably keep him from working." ECF Dkt. 10-11, p. 350. Dr. Gannon's summary essentially concedes the fact that her treatment records memorialize Plaintiff's belief that he cannot work, rather than describe symptoms which would prevent him from working.

Accordingly, the ALJ did not err when he rejected portions of the opinions of treating physicians that were not supported by the treatment notes. To the extent that the extreme limitations described by Drs. Schwartz, Datta, and Gannon were not supported by any diagnostic tests or any

-11-

notes taken during treatment, the ALJ clearly articulated valid reasons for rejecting their opinions and not including those limitations in his RFC.

Moreover, the treating notes of all of Plaintiff's physicians support the conclusions of reviewing psychologists, Alice Chambly, Psy.D. and Cindy Matyi, Ph.D. Dr. Chambly found mild restrictions in Plaintiff's activities of daily living and mild difficulties in maintaining social function and moderate difficulties in maintaining concentration, persistence, and pace, with no periods of decompensation. Dr. Chambly restricted Plaintiff to simple, repetitive tasks in a low stress environment with no exact production quotas or high pace production work and no detailed reading instructions. ECF Dkt. #10-10, p. 321. Dr. Mayti concluded that Plaintiff has moderate difficulties in sustainability and mild social and adaption deficits. *Id.* at 340. The Social Security regulations and rulings expressly recognize that state agency psychologists are "highly qualified physicians who are also experts in Social Security disability evaluations." 20 C.F.R. §404.1527(f)(2)(i); see also *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir.2006)(en banc)(affirming ALJ's decision adopting reviewing physician's opinion over opinion of treating physician). Accordingly, Plaintiff's first argument does not have merit.

Next, Plaintiff contends that the ALJ failed to appropriately assess his credibility. An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir.1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir.2001), quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). The threshold for overturning an ALJ's credibility determination on appeal is considerable, such that, in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08–4706, 2010 WL 4810212 at *3 (6th Cir. Nov.18, 2010), citing *Heston v. Comm'r of Soc. Sec.*, *supra*, and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact." *Sullenger v.*

*Commissioner of Social Security*, No. 07–5161, 2007 WL 4201273 at *7 (6th Cir. Nov.28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir.2007).

At the hearing, Plaintiff testified that his work suffered after the automobile accident in 1997, and that he was fired from the job he held prior to the accident. ECF Dkt. #10-3, p. 96. As a result of the accident, he claimed to suffer from panic attacks, headaches, and problems with concentration. *Id.* at 98. He completed the tenth grade, but that he reads slowly and has difficulty comprehending written material, and that he is a bad writer. *Id.* at 99. Plaintiff has difficulty sleeping, which is an ongoing problem described throughout his treatment records. *Id.* at 100. He testified that he was recently diagnosed with diverticulitis, and that he suffers a lot of headaches of varying intensity, for which he intends to see a neurologist. *Id.* at 104. He experiences sharp stabbing pains in his neck approximately four times a year. *Id.* at 109. Driving and being in crowds cause Plaintiff stress. *Id.* at 102. He testified that he has one or two good days a week. *Id.* at 114.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

Here, there is evidence of mild degeneration of the spine, however, that evidence alone is insufficient to demonstrate Plaintiff's inability to perform medium work.  When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination.  *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993).  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that Plaintiff's medical condition could be expected to produce pain, but not the kind of severe pain that Plaintiff alleged.  It should be noted that the ALJ did not totally reject Plaintiff's allegations of pain, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of his symptoms were not substantiated by the objective medical findings or other evidence in the record.   An ALJ is not required to accept a claimant's own testimony regarding his pain.  *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987).  Here, the AJL wrote, "Although Mr. DiPalma admits to very few daily activities, the preponderance of the medical evidence does not establish a medical reason why his activities should be so limited."  ECF Dkt. #10-2, p. 81.  Plaintiff has not identified any evidence in the record to challenge the ALJ's conclusion.  Therefore, Plaintiff's second argument is not well-taken.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

DATE: February 29, 2012

                                      */s/George J. Limbert*
                                      GEORGE J. LIMBERT
                                      UNITED STATES MAGISTRATE JUDGE